IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JARELL TERRY,
ADC #149998                                                                                          PLAINTIFF

V.                              CASE NO. 1:18-CV-81-DPM-BD

SAMUEL F. GUILTNER, *et al.*                                                         DEFENDANTS

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections**

This Recommended Disposition (Recommendation) has been sent to Chief District Judge D.P. Marshall Jr. Any party who disagrees with the findings or conclusions in this Recommendation may file written objections with the Clerk of Court. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If parties do not file objections, they may waive the right to appeal and questions of fact may be jeopardized. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

**II.    Background**

Plaintiff Jarell Terry, an inmate in the Arkansas Department of Correction (ADC), filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr. Terry's claims against Defendants Garris, Williams, Banister, Naylor, and Kelly were dismissed. (#17) In his remaining claims, he contends that Defendants Guiltner and Walker (Defendants) used excessive force against him. Specifically, Mr. Terry alleges

that Defendant Guiltner grabbed his arm while telling him to go back to his barracks, and that Defendant Walker twisted his wrists and unnecessarily tightened his handcuffs while escorting him down the hall to his barracks. (#2)

Defendants have moved for summary judgment on the merits of Mr. Terry's claims. (#47) Mr. Terry has not responded to the Defendants' motion, and the response deadline has passed.

### III. Standard

In a summary judgment, the court rules in favor of a party without a trial. A moving party is entitled to summary judgment, however, only if the evidence shows that there is no genuine dispute as to any fact important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). If there is a dispute about important facts, the case cannot be decided on summary judgment. As movants here, Defendants Guiltner and Walker have the burden of showing that there is no real dispute about any fact that would make a difference in how the case is decided. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

### IV. Mr. Terry's Version of the Facts

According to Mr. Terry, on June 28, 2018, while he was confined at the North Central Unit of the ADC, he left his barracks for yard call with his shirt untucked, contrary to the ADC grooming policy. (#2, #47-5, p. 21) Defendant Guiltner, who was working the door of barracks 10, noticed Mr. Terry's untucked shirt and said, "hey, hey, hey." (#2, p. 5; #47-5, pp. 21, 23-25) Upon hearing Defendant Guiltner, Mr. Terry

2

realized he was out of compliance, stepped back into the barracks, tucked in his shirt, stepped back into the hall, and proceeded to yard card. (#47-5, p. 22-23)

As Mr. Terry was walking down the hall, Defendant Guiltner ordered him to tuck in his shirt. (#47-5, p. 26) Mr. Terry told Defendant Guiltner that his shirt *was* tucked in and that he knew the ADC tucked-shirt policy; and he kept walking. (#2, p. 5; #47-5, pp. 26, 31) Defendant Guiltner then said, "get your ass over here boy" and told Mr. Terry that he could not go to yard call and, instead, would have to return to his barracks. (#2, p. 5; #47-5, pp. 23, 26-27) Mr. Terry responded: "I can't go to yard call? I'm trying to go to yard call."[1] (#47-5, p. 24) Defendant Guiltner grabbed his arm and called for backup. (#47-5, pp. 23, 25, 28)

Mr. Terry again stated that he knew the policy and told Defendant Guiltner not to grab his arm. (#47-5, p. 32) Defendant Guiltner told Mr. Terry that he was going to "the hole." (#2, p. 5; #47-5, p. 32)

Defendant Walker arrived as backup and placed Mr. Terry in handcuffs without incident. (#47-5, p. 33-35) According to Mr. Terry, Defendant Walker and an unnamed officer escorted him to the infirmary. (#47-5, p. 36) As Defendant Walker escorted Mr. Terry down the hallway to the infirmary (pre-lockup), "[he] bent and twisted [Mr. Terry's] wrists in a painful manner stating that it was escort position, while doing this he was also squeezing the cuffs purposely inflicting pain. . . ." (#2, p. 6; #47-5, p. 36)

---

[1] Mr. Terry acknowledges that he was disobeying a direct order when he questioned Defendant Guiltner, rather than going back to the barracks as ordered. (#47-5, p. 27)

3

V.	**Defendants' Version of the Facts**

According to Defendant Guiltner's declaration (#47-1), he was working as a security officer at the North Central Unit on the day of the incident, monitoring hallways in zones 1, 9, and 10 barracks. He noticed that Mr. Terry was walking down the hall without a shirt, in violation of ADC policy. (#47-1) He gave Mr. Terry a direct order to go back in the barracks to finish getting dressed. (#47-1) Mr. Terry refused the direct order and replied that he was headed to yard call. (#47-1)

Defendant Guiltner states that he told Mr. Terry a second time to return to the barracks, but Mr. Terry again refused. (#47-1) According to Defendant Guiltner, Mr. Terry pointed a finger in his face and said he didn't have to listen to him. (#47-1, #47-3) Defendant Guiltner placed his hand on Mr. Terry's arm to prevent him from leaving the area and told him that he was writing him a disciplinary violation for his misconduct. (#47-1)

Meanwhile, Defendant Walker was securing the south hall when he noticed that a conversation between Mr. Terry and Defendant Guiltner was becoming "confrontational." (#47-1; #47-2) In response, he locked the exit door and walked toward Defendant Guiltner to assist. (#47-1; #47-2) Defendants do not state who placed handcuffs on Mr. Terry, but Defendant Walker testified that no force was used by anyone in placing Mr. Terry in cuffs. (#47-1; #47-2) All parties agree that Mr. Terry was placed in handcuffs without incident.

According to the declarations of both Defendants, security officers escorted Mr. Terry to pre-lockup. (#47-1; #47-2) Defendant Walker testified that he did not see any signs of distress as Mr. Terry was escorted away. (#47-2)

In his declaration, Defendant Walker avows that he did not escort Mr. Terry to pre-lockup, and could not have done so, because he was responsible for letting inmates in and out of south hall and had possession of the emergency key. (#47-2) Defendant Guiltner also testified that neither he nor Defendant Walker escorted Mr. Terry to pre-lockup because they were both working their assigned posts. (#47-1)

Defendant Guiltner wrote Mr. Terry a disciplinary for his conduct. (#47-1; #47-3) Warden Williams, who is not a Defendant, affirmed the disciplinary after viewing video footage of the incident. Warden Williams determined that Defendant Guiltner had grabbed Mr. Terry's arm in a "non-aggressive manner in an attempt to stop [him] from leaving the area." (#47-4)

## VI. **Official Capacity Claims**

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68-69 (1989). Accordingly, Mr. Terry's official capacity claims for money damages against the Defendants must be dismissed.

## VII. **Individual Capacity Claims**

Defendants are liable for violating Mr. Terry's Eighth Amendment rights if they used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort

5

to maintain or restore discipline."[2] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); see also *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). Factors in determining whether the force used was reasonable include: the objective need for the force; the relationship between the need and the degree of force used; the threat reasonably perceived by the defendants; any efforts by the defendants to temper the severity of their forceful response; and the extent of the inmate's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (*per curiam*); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006).

    A.    Defendant Guiltner

Here, even construing the facts in a light most favorable to Mr. Terry, his excessive force claim against Defendant Guiltner fails. Under both versions of the facts, Defendant Guiltner held Mr. Terry's arm to prevent him from leaving the area after he disobeyed his direct order to return to the barracks. Mr. Terry admits that he disobeyed Defendant Guiltner's order and concedes that he was not injured when Defendant Guiltner grabbed his arm to prevent him from leaving. Mr. Terry has not offered any

---

[2] Mr. Terry was being held for violation of parole on a prior conviction while awaiting criminal charges (#2, p. 4), so the Court analyzes his claims under the Eighth Amendment. See *Sterling v. Taylor*, 2017 WL 1511296 (E.D. Ark. 2017) ("after conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Graham v. Connor*, 490 U.S 386, (1989)), *aff'd* 710 Fed. App.'x 715 (8th Cir. 2018) (unpublished). In *Sterling*, the plaintiff was convicted of federal charges but held in a state detention facility awaiting trial on state charges when the alleged excessive force occurred. *Id*. Because the plaintiff in *Sterling* had been convicted of federal crimes, he was not a pretrial detainee so the Eighth Amendment applied. *Id* at *3.

6

evidence to show that Defendant Guiltner held onto his arm for any purpose other than to maintain order and restore discipline.

Mr. Terry did not allege, and has offered no evidence, that Defendant Guiltner acted maliciously or sadistically. Instead, his argument is that the force was excessive because it was unnecessary. (#47-5, p. 38) Under settled law, however, evidence of excessive force must support a "reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Accordingly, Defendant Guiltner is entitled to qualified immunity[3] and Mr. Terry's excessive force claims against Defendant Guiltner should be dismissed.

B.   Defendant Walker

The Defendants offer undisputed proof that Defendant Walker was not the officer who escorted Mr. Terry after the incident. Both Defendants Guiltner and Walker provided affidavits stating that neither Defendant escorted Mr. Terry to the infirmary for his pre-lockup assessment. Mr. Terry has offered no evidence to contradict Defendants' evidence.

---

[3] To determine whether Defendants are entitled to qualified immunity, the Court considers two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); see also *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer to either question is "no," the Defendants are entitled to qualified immunity.

Mr. Terry was warned that if he did not respond to the Defendants' Motion for Summary Judgment and their Statement of Undisputed Facts, the Court could deem the Defendants' version of the facts admitted. *See* Local District Court Rule 56.1. (#50) Assuming the undisputed Defendants' version of the incident, Defendant Walker could not have used excessive force against Mr. Terry, as alleged in the complaint.

## VIII. Conclusion

The Court recommends that the Defendants' motion for summary judgment (#47) be GRANTED, and that this lawsuit be DISMISSED, with prejudice. Mr. Terry's pending motion for copies (#51) and his motion for settlement offer (#52) should be DENIED as moot.

DATED, this 24th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE