IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

JARELL TERRY,
ADC #149998                                                              PLAINTIFF

V.                        CASE NO. 1:18-CV-81-DPM

SAMUEL F. GUILTNER, *et al*.                                             DEFENDANTS

## RECOMMENDED DISPOSITION

### I.   Procedures for Filing Objections

This Recommended Disposition (Recommendation) has been sent to Chief Judge D.P. Marshall Jr. Any party may file written objections with the Clerk of Court. Objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be filed within 14 days.

Parties who do not file objections may waive the right to appeal questions of fact. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

### II.  Background

Plaintiff Jarell Terry, an Arkansas Department of Correction (ADC) inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) In his complaint, Mr. Terry claims that Defendants Guiltner and Walker used excessive force against him.[1]  Specifically, he alleges that Defendant Guiltner grabbed his arm, in

---

[1] The Court previously dismissed Mr. Terry's claims against Defendants Garris, Williams, Banister, Naylor, and Kelly. (#17)

violation of ADC policy, and ordered him back to his barracks. He further alleges that Defendant Walker twisted his wrists and unnecessarily tightened his handcuffs while escorting him down the hall to the infirmary. (#2)

Defendants Guiltner and Walker moved for summary judgment on the merits of these claims. Defendant Guiltner contends that he did not use excessive force by grabbing Mr. Terry's arm; Defendant Walker asserts that he could not have used excessive force while escorting Mr. Terry because he was not the escorting officer. (#47) Mr. Terry did not respond to the motion. The Court recommended that the motion be granted. (#53)

Mr. Terry objected to the Recommendation. He argued that Defendant Guiltner had used provoking language during the incident giving rise to his complaint. And, for the first time, Mr. Terry stated that Defendant Guiltner had never issued a direct order to him. (#60) Mr. Terry also insisted that Defendant Walker *was* the escorting officer. In support, he noted a grievance form in the record that referred to Defendant Walker as the escorting officer. (#60)

Judge Marshall referred the case for a Supplemental Recommendation in the light of Mr. Terry's objections to the Recommendation. (#65) The Court held an evidentiary hearing on November 5, 2019, to allow the parties to provide any additional evidence.

### III. Standard

In a summary judgment, the court rules in favor of a party before trial. A moving party is entitled to summary judgment only if the evidence shows that there is no genuine

2

dispute as to any fact that is important to the outcome of the case. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). If there is a dispute about an important fact, the case cannot be decided on summary judgment.

As movants, the Defendants must produce evidence showing that there is no real dispute about any fact that would make a difference in how the case is decided. If they meet this burden, Mr. Terry must respond by producing evidence that contradicts Defendants' evidence. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

## IV.    The Undisputed Material Facts

According to Mr. Terry, on June 28, 2018, he left his barracks for yard call with his shirt untucked, contrary to the ADC grooming policy. (#2, #47-5, p. 21) Defendant Guiltner, who was working the door of barracks 10, noticed Mr. Terry's untucked shirt and said, "hey, hey, hey." (#2, p. 5; #47-5, pp. 21, 23-25) Upon hearing Defendant Guiltner, Mr. Terry realized that he was out of compliance with the grooming policy, stepped back into the barracks, tucked his shirt, stepped back into the hall, and proceeded toward yard card. (#47-5, pp. 22-23) Defendant Guiltner disputes that the issue was Mr. Terry's untucked shirt. He testified in his declaration that Mr. Terry was not wearing a shirt at all. (#47-1) Whether Mr. Terry was shirtless or wearing his shirt untucked is not a fact that affects the outcome of this case.

According to Mr. Terry, as he continued down the hall toward the yard, Defendant Guiltner inexplicably ordered him to tuck in his shirt.[2] (#47-5, p. 26) He told Defendant Guiltner that his shirt *was* tucked in and kept walking. (#2, p. 5; #47-5, pp. 26, 31)

According to Mr. Terry, Defendant Guiltner said, "get your ass over here boy" and told him to return to his barracks. (#2, p. 5; #47-5, pp. 23, 26-27) Mr. Terry says he responded: "I can't go to yard call? I'm trying to go to yard call." (#47-5, p. 24) Regardless of the exact conversion between the two, there is no real dispute about the fact that Defendant Guiltner ordered Mr. Terry to return to his barracks. When Mr. Terry did not comply, Defendant Guiltner grabbed his arm and called for backup. (#47-5, pp. 23, 25, 28; #47-1) Mr. Terry stated that he knew ADC policy and under that policy, that Defendant Guiltner should not grab his arm. (#47-5, p. 32) At that point, Defendant Guiltner told Mr. Terry that he was going to "the hole." (#2, p. 5; #47-5, p. 32)

According to Defendant Walker's declaration, on the day of the incident, he was responsible for securing the south hall when he noticed Mr. Terry and Defendant Guiltner having a conversation that was becoming "confrontational." (#47-1; #47-2) In response to the situation, he locked the exit door and walked toward Defendant Guiltner to assist him.

---

[2] Defendant Guiltner states that he gave Mr. Terry a direct order to go back to the barracks to finish getting dressed and that Mr. Terry responded by pointing a finger in his face and stating that he didn't have to listen to him. (#47-1)

4

(#47-1; #47-2) All parties agree that Mr. Terry was placed in handcuffs at that time, without incident.[3] (#47-5, pp. 33-35)

Defendant Guiltner wrote Mr. Terry a disciplinary. (#47-1; #47-3) Warden Williams, who is not a Defendant, affirmed the disciplinary after viewing video footage of the incident. (#47-4) Warden Williams determined that Defendant Guiltner had grabbed Mr. Terry's arm in a "non-aggressive manner in an attempt to stop [him] from leaving the area." (#47-4)

The parties dispute whether Defendant Walker was one of the officers who escorted Mr. Terry to the infirmary after the dust-up. According to the declarations of both Defendants, other security officers (not parties to the lawsuit) escorted Mr. Terry to the infirmary for his pre-lockup examination. (#47-1; #47-2) In his declaration, Defendant Walker attests that he could not have escorted Mr. Terry, because he was responsible for letting inmates in and out of south hall and had possession of the emergency key. (#47-2)

In his objection to the previous Recommendation, however, Mr. Terry directed the Court to a grievance that supports his assertion that Defendant Walker was one of the escorting officers. (#60, p.5) On the grievance form about the incident, Sergeant Clem wrote, "Cpt. Walker was utilizing the proper escort position authorized by policy." (#60,

---

[3] Mr. Terry alleges that Defendant Guiltner put him in handcuffs; the Defendants do not provide any evidence regarding who placed Mr. Terry in handcuffs.

5

p.5) At the evidentiary hearing, the Court gave Defendants an opportunity to explain why Sergeant Clem would have indicated that Defendant Walker was an escorting officer if that was not true. The Defendants did not offer any evidence or testimony explaining the discrepancy between Sergeant Clem's grievance response and the Defendants' affidavits attesting that Defendant Walker was *not* the escorting officer.

There was a video recording of the entire incident that would have settled the matter. Defendants' counsel represented to the Court that ADC officials destroyed the video allegedly in compliance with ADC's video-retention policy, i.e., routine videos are deleted (or copied over) after 90 days. Counsel conceded that ADC officials used the video in Mr. Terry's disciplinary appeal on August 15, 2018. (#47-4) That was after Mr. Terry had filed a grievance about the incident and, therefore, after officials knew, or should have known, that the incident could be the subject of litigation. (#60, p.5) They nevertheless failed to preserve the video.[4]

For purposes of summary judgment, the Court will assume that Mr. Terry's versions of the facts are true—i.e., that Defendant Walker was one of the escorting

---

[4] When an inmate files a grievance alleging a physical assault, ADC officials should preserve all videos of the alleged incident in anticipation that a federal lawsuit could be filed. Here, when Mr. Terry filed a grievance alleging excessive force, ADC officials should have preserved the video of the incident. The failure of ADC officials to preserve videos may well trigger a spoliation instruction at trials of such incidents. See Fed. R. Civ. P. 37(e); see also *Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004) (destruction of evidence in violation of a party's document retention policy is strong evidence of bad faith).

6

officers; that he bent and twisted Mr. Terry's wrists in a painful manner, stating that it was the proper escort position; and that the cuffs were too tight for comfort. (#2, p. 6; #47-5, p. 36)

Mr. Terry testified that, once he arrived at the infirmary, he was immediately examined by medical personnel before being taken to lock-up. He admitted that, at no time during his pre-lockup assessment by medical personnel, did he complain that his arms or wrists were injured. Two weeks later, Mr. Terry complained to infirmary staff, for the first time, about wrist pain.

## V.     Official Capacity Claims

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Terry's official capacity claims for money damages against the Defendants must be dismissed.

## VI.    Individual Capacity Claims

To prevail on an excessive-force claim, Mr. Terry must demonstrate that the Defendants used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline."[5] *Wilkins v. Gaddy*, 559 U.S. 34, 37

---

[5] Mr. Terry was being held for violation of parole on a prior conviction while awaiting criminal charges. (#2, p.4) Accordingly, the Court analyzes his claims under the Eighth Amendment. *Sterling v. Taylor,* 2017 WL 1511296 (E.D. Ark. 2017) ("after conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'")

(2010); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair,* 707 F.3d 984, 990 (8th Cir. 2013). Relevant factors include: the objective need for the force; the relationship between the need and the amount of force used; the threat reasonably perceived by the defendants; any efforts by the defendants to temper the severity of their forceful response; and the extent of the inmate's injuries. *Walker v. Bowersox,* 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

    A.    Defendant Guiltner

In his objection to the previous Recommendation, Mr. Terry alleged, for the first time, that Defendant Guiltner used "provoking language" during the incident; specifically, that he said, "hey, hey, hey" and "get your ass over here boy." (#61, pp.1, 4) At the evidentiary hearing, Mr. Terry explained that by "provoking language" he meant Defendant Guiltner's calling him "boy" was a racial slur. Mr. Terry also testified that he did not consider Defendant Guiltner's order to return to his barracks legitimate because Defendant Guiltner violated ADC policy when he grabbed his arm.

In his deposition, Mr. Terry acknowledged that he disobeyed a direct order when he argued with Defendant Guiltner rather than immediately returning to the barracks as

---

(quoting *Graham v. Connor*, 490 U.S 386, (1989) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)), *aff'd* 710 Fed. Appx. 715 (8th Cir. 2018) (unpublished). In *Sterling*, the plaintiff was convicted of federal charges and in a state detention facility awaiting trial on state charges when the alleged excessive force occurred. *Id*. Because the plaintiff in *Sterling* had been convicted of federal crimes, he was not a pretrial detainee and the Court held that the Eighth Amendment applied. *Id* at *3.

ordered. (#47-5, p. 27) For the first time in his objection to the earlier Recommendation, however, Mr. Terry stated that Defendant Guiltner did *not* give him a direct order. This new position contradicts statements he made in his deposition and his testimony at the hearing that he did not have to comply because the order was not legitimate. There is nothing in the record to support the new assertion that Defendant Guiltner did not order Mr. Terry to return to his barracks. (#61, p. 3)

It is undisputed that Defendant Guiltner grabbed Mr. Terry's arm to prevent him from leaving the barracks after he disobeyed the order to return to the barracks. Mr. Terry acknowledged that he was not injured when Defendant Guiltner grabbed his arm. Even if Defendant Guiltner did violate ADC policy when he grabbed Mr. Terry's arm, a doubtful proposition, he did not violate Mr. Terry's federally protected rights.

Mr. Terry did not allege, and has offered no evidence, that Defendant Guiltner acted maliciously or sadistically. He argues that the force was unnecessary (#47-5, p. 38), but under settled law, evidence of excessive force must support a "reliable inference of wantonness," and not "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

In his objection and in his testimony at the evidentiary hearing, Mr. Terry argued that, because Defendant Guiltner's order was contrary to ADC policy, he was not required to comply. This is not the law. Prisoners do not have a right to enforce

9

compliance with internal prison rules or regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir.1997); *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir.1996). Mr. Terry has presented no evidence to justify his refusal to obey Defendant Guiltner's order. Accordingly, Defendant Guiltner is entitled to qualified immunity,[6] and Mr. Terry's excessive-force claims against Defendant Guiltner should be dismissed.

There is a dispute about whether Defendant Guiltner used offensive, provoking language in the encounter. While that kind of language is inappropriate and unprofessional, it does not rise to the level of a constitutional violation.

    B.    Defendant Walker

Applying handcuffs does not amount to excessive force unless it results in more than minor injuries. *Haning v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005) (citing *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003)). Allegations of pain from handcuffs, without some evidence of a permanent injury, are insufficient to support an

---

[6] To determine whether Defendants are entitled to qualified immunity, the Court considers whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer to either question is "no," the Defendants are entitled to qualified immunity.

excessive-force claim. *Id.* (citing *Foster v. Metropolitan Airports Commission*, 914 F.2d 1076 (8th Cir. 1990)).

There is no evidence, other than Mr. Terry's own statements, that he suffered any injury to his wrist as a result of the manner that he was escorted to the infirmary. At the evidentiary hearing, the following colloquy occurred between Mr. Terry and counsel for the Defendants:

> Counsel: When Mr. Walker left you with the nurses at the infirmary, isn't it a fact that he walked away?
>
> Mr. Terry: Yes ma'am.
>
> Counsel: You never saw him again that day?
>
> Mr. Terry: No, ma'am.
>
> Counsel: And once you got to the infirmary, the medical personnel talked to you, correct?
>
> Mr. Terry: Yes, ma'am.
>
> Counsel: You did not complain to them about your wrist at that time—
>
> Mr. Terry: No ma'am.
>
> Counsel: Is that correct?
>
> Mr. Terry: Yes, ma'am.
>
> Counsel: And it was some two weeks later before you ever made a complaint about pain in your wrist, is that correct?
>
> Mr. Terry: Yes, ma'am.

> Counsel: And in fact, you were actually working out in your cell when your wrist starting hurting, is that correct?
>
> Mr. Terry: No, ma'am.
>
> Counsel: Is that what you told me in your deposition?
>
> Mr. Terry: Not in my cell.
>
> Counsel: Okay, you were working out and doing push-ups?
>
> Mr. Terry: Yes, ma'am, whenever I started feeling worse.
>
> Counsel: And when you were working out doing push-ups, your wrist started bothering you?
>
> Mr. Terry: Yes, ma'am.
>
> Counsel: Was it your first time working out since this accident?
>
> Mr. Terry: It was as soon as I actually—actually, it wasn't when I was working out when it had first started hurting me, it was whenever I had, like, got up off my bed; that's when I complained about my sick call.
>
> Counsel: And you then made a complaint about your wrist?
>
> Mr. Terry: Yes, ma'am.

(Hearing Recording, 10:41:10—10:42:48)

There is simply no evidence that Defendant Walker's actions were the proximate cause of an injury to Mr. Terry's wrist. Any injury Mr. Terry suffered during his walk to the infirmary was so minor that it did not warrant mention at his medical assessment. Defendant Walker did not violate Mr. Terry's federally protected right, and he is entitled to qualified immunity.

## VII. Conclusion

The Court recommends that the Defendants' motion for summary judgment (#47) be GRANTED, and that this lawsuit be DISMISSED, with prejudice.

Mr. Terry's motion to appoint counsel (#63), his motion for a mental examination (#64), his motions for copies (#69, #70), his motions for updates on the status of his case (#71, #73), and his motion for a transcript (#72) should be DENIED, as moot.

DATED this 15th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE